LeROY CONSTRUCTION CO. *v.* McCANN.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—REC-
ORD—FINDINGS.

The Supreme Court hears a chancery matter *de novo* on the
record but relies to a great extent upon the findings of fact
of the chancellor who heard the witnesses and observed their
demeanor in the courtroom on the witness stand.

2. FRAUD—MISREPRESENTATION IN NEWSPAPER ADVERTISEMENT.

A misrepresentation contained in a newspaper advertisement may
constitute fraud, if it is relied upon by party claiming to
have been defrauded by agreement to purchase property be-
cause of it.

3. SAME—LAND CONTRACT—MISREPRESENTATION—EXAMINATION OF
LAND.

The fact that purchasers under land contract went on the land
itself did not, of itself, prohibit their showing they were
misled by misrepresentation of vendors.

4. VENDOR AND PURCHASER—RESCISSION OF LAND CONTRACT—FRAUD
—RECORD.

Finding of trial court in suit to rescind land contract that de-
fendant vendors had misrepresented as to sewage and water
facilities for the property to plaintiff corporation's officers
is affirmed under record presented.

5. FRAUD—REPUDIATION OF CONTRACT.

A person who has been defrauded must act promptly, and if
he would repudiate the contract, he must do nothing in affirm-
ance of it after ascertaining the facts.

REFERENCES FOR POINTS IN HEADNOTES
[1]  3 Am Jur, Appeal and Error § 912.
[3]  55 Am Jur, Vendor and Purchaser § 66.
[5, 6]  55 Am Jur, Vendor and Purchaser § 570.

6. VENDOR AND PURCHASER—FRAUD—WAIVER—AFFIRMANCE OF LAND
   CONTRACT.

    Land contract purchasers' payment of judgment against them
    for $513.01 for taxes the contract obligated them to pay, and
    which payment was made on the advice of counsel to do so
    about 2 months following discovery of fraud *held,* not to have
    thereby waived the fraud and affirmed the contract so as to
    preclude rescission thereof in suit brought for that purpose.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted January 8, 1959. (Docket No. 34, Calendar No. 47,745.) Decided June 5, 1959. Rehearing denied July 13, 1959.

Bill by LeRoy Construction Co., a Michigan corporation, against Peter F. McCann and Vera M. McCann for rescission of land contract. Decree for plaintiff. Defendants appeal. Affirmed.

*Harty, Austin, Dingell & Jones* (*Paul W. Harty,* of counsel), for plaintiff.

*Charles H. King,* for defendants.

KAVANAGH, J. On March 6, 1955, the advertisement which follows appeared in the Detroit News, placed there by defendants Peter and Vera McCann:

"Thirteen 40-foot lots. Dearborn township, water and sewer. Public and parochial schools near. Call owner. TOwnsend 6–8077."

Responding to this advertisement, a Mr. and Mrs. LeRoy Dunn, who were officers of plaintiff and appellee LeRoy Construction Company, first called Mr. McCann and then went out to see him and the lots referred to above. The Dunns claim that there was no discussion of sewer and water prior to completion of negotiations about price and their signing of a land contract.

The land contract was signed April 7, 1955. Its terms called for a down payment of $3,300, and the balance of $6,200 to be paid within a year.

Plaintiff instituted an action for rescission of the contract on April 6, 1956, claiming fraudulent misrepresentation in the advertisement quoted above.

Plaintiff contends, and the record before us discloses that, in fact, no water or sewage facilities existed on the 13 lots offered for sale by defendants when the advertisement appeared and the land contract was executed. Plaintiff asserts, further, that it did not discover a lack of water and sewerage on the 13 lots until December, 1955.

The record indicates that defendant Peter McCann flatly contradicted plaintiff on several points:

*"The Court:* What was the conversation concerning sewers and water when you went out to look at the property with the plaintiffs?

*"A.* We sat in my car, and I told them there was no sewer, and that there was water on the subdivision. And we drove around through the subdivision where their lots were and saw the fire hydrants and assumed that there was water, of course, in that subdivision.

*"The Court:* Who was there at the time?

*"A.* Just the 3 of us; Mr. and Mrs. Dunn and myself."

This is, of course, an appeal from a decree in a chancery matter and we hear it *de novo* on the record. But nonetheless we rely to a great extent upon the findings of fact of the chancellor who heard the witnesses and observed their demeanor in the courtroom on the witness stand. Here, on a record written in cold type, the defendants' words may seem more persuasive than do plaintiff's.

Yet the chancellor who saw and heard this whole matter plainly found that plaintiff had relied upon false statements published by defendants:

"Mr. McCann testified, and the court believed him when he stated that the presence of hydrants on the subdivision led him to believe that there was water on all of these lots. He freely admits in the testimony that the sewers only came to the edge of the subdivision, and he only so intended to represent. Nevertheless, the advertisement as worded would lead a purchaser to believe that these facilities were presently available to each of the lots. There is some controversy in the testimony as to whether or not this situation was explained to the plaintiff. But the court cannot believe, after a consideration of all the testimony, that the plaintiff was made fully aware of the situation before the month of December, 1955, at which time it admittedly discovered the true situation."

A misrepresentation contained in a newspaper advertisement may, of course, constitute fraud, if it is relied upon by plaintiffs and induces their agreement to purchase. See, *e.g., Popielarski* v. *Jacobson,* 336 Mich 672.

The trial judge was also correct in holding that plaintiff's officers going on the land did not, of itself, prohibit their showing that they were misled by misrepresentation of the other party. *Jackson* v. *Armstrong,* 50 Mich 65.

The weight we give to the finding of facts made by the judge who saw and heard the witnesses leads us to affirm as to this issue. *Hartka* v. *Hartka,* 346 Mich 453; *Borsvold* v. *United Dairies,* 347 Mich 672; *Blackwell* v. *Keys,* 353 Mich 212.

There is, however, another aspect of this case presenting a more difficult problem. Plaintiff had defaulted in its agreement to pay a prorated share of taxes on the 13 lots. Defendants thereupon obtained a judgment for the taxes against plaintiff in the sum of $513.01. This judgment was paid by plaintiff in February, 1956, 2 months after plaintiff

admittedly acquired knowledge of defendants' mis-representation of water and sewer facilities. Defendants, therefore, assert that the payment amounted to a waiver by plaintiff of the alleged fraud.

The record reveals that the judgment for taxes was paid by plaintiff upon the advice of 2 attorneys. No further act of affirmance of the contract is claimed to have taken place.

It is well settled that "a person * * * who has been defrauded, must act promptly; and, if he would repudiate the contract, he must do nothing in affirmance of it after ascertaining the facts." *Merrill* v. *Wilson,* 66 Mich 232, 243.

See, also, *Foster Machine Co.* v. *Covel Manfg. Co.,* 219 Mich 455 (dicta that one who *fully performs* after acquiring knowledge waives fraud).

Thus, the question squarely before this Court was whether payment of a judgment for taxes under a land contract, without more, constituted waiver of fraud and affirmance of the contract.

The chancellor's opinion dealt thus with this issue:

"In addition, during this 4-month interval the plaintiff had paid a judgment in excess of $500 which the defendants had secured in the commissioner's court by reason of the failure of the plaintiff to pay certain taxes which were its obligation under the terms of the contract. The defendants take the position that this payment was an affirmance of the contract, inasmuch as it was made after the discovery of the fraud. This argument has been carefully investigated by the court. Under the law of Michigan it does not appear that the act of payment is sufficient in itself to affirm the contract unless accompanied by an intention to carry out its terms. The case of *Dinius* v. *Bolibrzuch,* 270 Mich 618, 620, quotes with approval the following statement from 27 CJ, Fraud, § 135, p 23:

" 'It was for the jury to weigh the evidence and determine whether plaintiffs, in fact, relied upon the representations and exercised reasonable prudence. Subsequent acts, in dealing with the property and rights acquired by the contract may, or may not, have constituted a waiver, depending upon whether done with full knowledge of the fraud and with manifested intention of abiding by the contract, and waive all right to recover damages for the deception.'

"Also, see *Monroe* v. *Hoffman,* 276 Mich 281, 288.

"In the case at bar, within 30 days after the payment the plaintiff rescinded, and there were no other acts on its part from which it could be concluded as a matter of fact that it had determined to carry out the contract with full knowledge of the fraud. Additionally, there was testimony that this payment was made upon the advice of counsel, and the court so finds.   Therefore, it is determined that the mere act of payment constituted no affirmance of the contract."

We believe that the payment of the taxes under legal compulsion, and with evidence of legal advice to do so, in order to preserve plaintiff's rights, does not of and by itself disclose an intention to waive the fraud and affirm the contract.

Affirmed.   Costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Voelker, JJ., concurred.