BLACKBURNE & BROWN MORTGAGE COMPANY v ZIOMEK

Docket No. 248909. Submitted October 5, 2004, at Detroit. Decided December 21, 2004, at 9:05 a.m.

Blackburne & Brown Mortgage Company brought an action in the Wayne Circuit Court pursuant to the Michigan Uniform Enforcement of Foreign Judgments Act, MCL 691.1171 *et seq.*, against Christopher B. Ziomek and the Risko-Ziomek Funeral Home, Inc., seeking enforcement of a California judgment, which confirmed a California arbitration award granted without participation by the defendants, for liquidated damages under an alleged loan agreement for the refinancing of a mortgage on the defendants' funeral home. The Wayne Circuit Court, Susan D. Borman, J., quashed the California judgment, after determining that the forum-selection clause in the alleged loan agreement did not grant the California court personal jurisdiction over the defendants because there was no contractual agreement between the parties. The plaintiff appealed, claiming that full faith and credit must be given the California judgment and that the trial court erred in finding that the California court did not have personal jurisdiction over the defendants.

The Court of Appeals *held*:

1. The Wayne Circuit Court correctly determined that, because there was no binding loan agreement, the forum-selection provision was unenforceable. There was no binding loan agreement because the defendants failed to respond within the time limit set by the plaintiff for acceptance of its offer. When the defendants did respond, they responded with a counteroffer that was not accepted by the plaintiff. The plaintiff also never performed under the alleged loan agreement.

2. Full faith and credit need not be given the California judgment in this case. Although the Full Faith and Credit Clause, US Const, art IV, § 1, generally requires recognition of the judgments of sister states, a collateral attack may be made in a Michigan court by showing that the judgment to be enforced was void for a lack of jurisdiction of the issuing court over the defendant. Solely by sending mail to and having telephonic communication with the plaintiff in California, the defendants did not

maintain sufficient minimum contacts with California, as required for due process, to provide the California court with personal jurisdiction over the defendants. Also, the property that was the subject of the refinancing effort was in Michigan. The California court judgment was void for a lack of personal jurisdiction over the defendants.

Affirmed.

1. JUDGMENTS — FOREIGN JUDGMENTS — FULL FAITH AND CREDIT — ENFORCEMENT.

Although the Full Faith and Credit Clause of the United States Constitution generally requires recognition of the judgments of sister states, a collateral attack may be made in a Michigan court in an action brought under the Michigan Uniform Enforcement of Foreign Judgments Act showing that the foreign judgment is void for a lack of jurisdiction of the issuing court over the defendant (US Const, art IV, § 1; MCL 691.1171 *et seq.*).

2. CONTRACTS — FORUM-SELECTION CLAUSES.

Where there is no valid, binding contract, any forum-selection clause in the alleged contract would not constitute a basis for personal jurisdiction over the parties by the selected forum.

*Stuart M. Collis, P.C.* (by *Stuart M. Collis*), for the plaintiff.

*Angelo A. Plakas and Associates, P.C.* (by *Angelo A. Plakas* and *Mark A. McConnell*), for the defendants.

Before: KELLY, P.J., and GAGE and ZAHRA, JJ.

ZAHRA, J. Relying on a forum-selection clause in a loan agreement allegedly executed by the litigants, plaintiff sought and obtained an arbitration award in California and subsequently obtained a California judgment confirming the arbitration award. Plaintiff commenced this action in Michigan to enforce the California judgment. At issue is whether the Michigan trial court erred in examining the alleged agreement to determine whether a valid contract existed that gave the California court jurisdiction over defendants. We

hold that the court properly examined the agreement to determine jurisdiction. Because the trial court properly determined that a valid contract was never formed and that the California court consequently lacked personal jurisdiction over defendants, the court did not err in granting defendants' motion to quash the California judgment. We affirm.

## I. FACTS AND PROCEDURE

In 2001, defendants sought to refinance their commercial property, a funeral home located in Livonia, Michigan. They contacted a mortgage broker, who put them in touch with plaintiff, a California mortgage broker. Plaintiff sent defendants a loan approval letter (the loan agreement) and a good-faith estimate of closing costs. The loan agreement indicated that it was not valid unless it was accepted by defendants no later than July 13, 2001. The loan agreement included a clause that provided for liquidated damages in an amount equal to a percentage of the loan amount in the event of cancellation or breach of the agreement. The agreement also included an addendum containing an arbitration agreement, which stated that all disputes must be resolved in Sacramento County, California, by an arbitrator applying California law. The agreement had an integration clause providing that the loan approval letter and its addendum constituted the final expression of the agreement.

On the good-faith estimate of closing costs, defendants crossed out and reduced the amount of the mortgage broker's commission from 3.5 percent to 1.5 percent and initialed the change. Defendants did not make the same change to the loan agreement. Defendants signed the loan agreement, the addendum, and the good-faith estimate of closing costs on July 26, 2001,

and returned the documents to plaintiff. At some point, defendants' change to the good-faith estimate of closing costs was crossed out, and the mortgage broker's commission was restored to its original amount of 3.5 percent. The parties dispute whether this change was made by defendants or plaintiff. In any case, plaintiff ultimately signed the documents that were returned by defendants. Defendants maintain that they did not subsequently hear from plaintiff and eventually arranged for financing through another broker.

When defendants failed to refinance through plaintiff, plaintiff sought recovery under the liquidated damages clause of the agreement. Plaintiff filed an arbitration demand in California, relying on the arbitration agreement addendum to the loan agreement. Following an arbitration hearing in June 2002, which defendants did not attend,[1] the arbitrator issued an award for plaintiff. Plaintiff subsequently filed a petition to confirm the arbitration award in the Superior Court of California. On December 5, 2002, the California Superior Court in Sacramento County confirmed the award and issued a judgment for plaintiff in the amount of $61,500.

Plaintiff commenced this action in the Wayne Circuit Court to enforce the California judgment. Defendants filed a motion to quash the judgment, arguing that the California court lacked jurisdiction to enter the judgment because a valid contract did not exist between the parties. The trial court examined the parties' transaction and determined that defendants had materially altered the terms of plaintiff's original offer when they changed the number of points they were willing to pay

---

[1] Defendants allege that they did not receive notice of the arbitration hearing.

to the mortgage broker, resulting in a counteroffer. The court further determined that plaintiff rejected defendants' counteroffer by crossing out defendants' change and reinserting the original terms and that plaintiff never obtained defendants' assent to the original terms. Therefore, the court concluded that a valid contract never existed between the parties. Further, the court determined that the alleged agreement was the only basis for requiring arbitration and allowing a California court to assert personal jurisdiction over defendants. Because a valid contract never arose, defendants could not be required to arbitrate, and the California court lacked personal jurisdiction over defendants. Accordingly, the trial court concluded that the California judgment was void and unenforceable.

## II. ANALYSIS

Plaintiff first argues that the transaction was governed by the Federal Arbitration Act (FAA), 9 USC 1 *et seq.*, because the loan agreement contained an arbitration clause. However, plaintiff has failed to adequately brief this issue or point to specific language from the FAA supporting its position. "An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003). "Insufficiently briefed issues are deemed abandoned on appeal." *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471; 628 NW2d 577 (2001). Therefore, we decline to address this argument.

Plaintiff next argues that the trial court erred by reexamining the merits of the arbitrator's decision in deciding whether to give full faith and credit to the

California judgment. Our consideration of this issue requires review of the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.,* as well as the Full Faith and Credit Clause of the United States Constitution, US Const, art IV, § 1. Questions of statutory interpretation are reviewed de novo. *Wayne Co v Hathcock,* 471 Mich 445, 455; 684 NW2d 765 (2004). Constitutional questions are also reviewed de novo. *Id.* This case also requires us to review the trial court's jurisdictional ruling, which is similarly reviewed de novo. *Jeffrey v Rapid American Corp,* 448 Mich 178, 184; 529 NW2d 644 (1995).

We interpret the UEFJA "to effectuate its general purpose to make uniform the law of those states which enact it." MCL 691.1178. The UEFJA provides, in pertinent part:

> The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner. [MCL 691.1173.]

A "foreign judgment" is "any judgment . . . of a court of the United States or of any other court that is entitled to full faith and credit in this state." MCL 691.1172. "The Full Faith and Credit Clause requires that a foreign judgment be given the same effect that it has in the state of its rendition." *Jones v State Farm Mut Automobile Ins Co,* 202 Mich App 393, 406; 509 NW2d 829 (1993). Although the Full Faith and Credit Clause requires recognition of the judgments of sister states, "collateral attack may be made in the courts of this [s]tate by showing that the judgment sought to be

enforced was void for want of jurisdiction in the court which issued it." *Delph v Smith*, 354 Mich 12, 16; 91 NW2d 854 (1958), quoting *Johnson v DiGiovanni*, 347 Mich 118, 126; 78 NW2d 560 (1956).

> The Due Process Clause of the Fourteenth Amendment limits the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident defendants. *Kulko v California Superior Court*, 436 US 84, 91; 98 S Ct 1690; 56 L Ed 2d 132 (1978). As a result, a valid judgment affecting a nonresident's rights or interests may only be entered by a court having personal jurisdiction over that defendant. *Int'l Shoe Co v Washington*, 326 US 310, 319; 66 S Ct 154; 90 L Ed 2d 95 (1945). [*Jeffrey, supra* at 185.]

The United States Constitution does not compel Michigan courts to give a foreign judgment full faith and credit when the jurisdiction of the foreign court has been successfully attacked. *California v Max Larsen, Inc*, 31 Mich App 594, 597-598; 187 NW2d 911 (1971). Thus, to be enforceable under the UEFJA, the foreign judgment must have been entered by a court with jurisdiction over the parties and the subject matter.

In *Offerdahl v Silverstein*, 224 Mich App 417, 420; 569 NW2d 834 (1997), this Court stated:

> A contractual forum selection clause, though otherwise valid, may not be enforced against one not bound by the contract. Just as the courts have jurisdiction to determine the threshold issue whether a party is bound to arbitrate pursuant to an agreement, we believe the courts of the state "where the cause of action arose,"[2] have jurisdiction to determine the threshold issue whether a party is bound

---

[2] In the present case, the cause of action arose at least in part in Michigan, because the property defendants sought to refinance was located in Michigan.

by the contract, and, accordingly, any forum selection and choice-of-law provision in the contract. [Citations omitted.][3]

Thus, where a party asks a Michigan court to enforce a forum-selection or choice-of-law provision of a contract that would give another state personal jurisdiction over the parties, the Michigan court may examine whether a binding agreement exists in order to determine whether the forum-selection or choice-of-law provision is enforceable. Therefore, we must determine whether a Michigan court can examine the validity of a contract and its forum-selection clause when a court from a different state has previously relied on the forum-selection clause for personal jurisdiction over the parties and has entered a judgment.

Courts from other jurisdictions have held that the state in which a foreign judgment is sought to be enforced may examine the validity of the agreement to determine whether the foreign court had jurisdiction to enter the judgment. For example, in *Firedoor Corp of America v Tibshraeny Bros Constr, Inc*, 126 Ariz 392, 393; 616 P2d 67 (Ariz App, 1980), the parties entered into a contract for the defendant to furnish doors for a construction project. A dispute developed, and the plaintiff commenced arbitration proceedings in New York for the unpaid contract balance, which resulted in a default award for the plaintiff. The plaintiff moved to confirm the arbitration award in a New York trial court and obtained a judgment for the amount awarded by the arbitrator. The defendant did not participate in those proceedings. An Arizona trial court subsequently

---

[3] In *Offerdahl, supra* at 420-421, this Court vacated the trial court's order enforcing the forum-selection and choice-of-law provisions of a contract and remanded the case for a determination whether the defendants were bound by the alleged agreement.

denied the plaintiff's petition to enforce the New York judgment, finding that the parties' contract did not contain an agreement to arbitrate.

On appeal, the plaintiff did not contest the trial court's finding that the contract did not contain an agreement to arbitrate. Rather, it argued that the foreign judgment was immune from challenge by another court. The appellate court disagreed, concluding that a foreign judgment may be attacked on the ground of a lack of personal or subject-matter jurisdiction. Because the claim of personal jurisdiction of the New York court over the defendant was wholly dependent on the alleged agreement to arbitrate, the Arizona court did not violate the principles of full faith and credit or Arizona's UEFJA, ARS 12-1701 *et seq.*, by determining that the New York judgment was void for want of jurisdiction. *Firedoor, supra* at 394. The court concluded that "[u]nder these circumstances, the finding by the arbitrator that there existed an agreement to arbitrate was not an adjudication to which [the defendant] was bound, and the resulting New York judgment was not a final determination of the issue which could bar inquiry" by a foreign court being asked to enforce the New York judgment. *Id.*

Similarly, in *Copeland Planned Futures, Inc v Obenchain*, 9 Wash App 32, 33-34; 510 P2d 654 (1973), the defendants signed a promissory note that, unlike prior notes executed between the parties, contained a provision for a New York simplified dispute resolution procedure. When the defendants later failed to pay the note, the plaintiff commenced an action under the simplified dispute resolution procedure and eventually obtained a default judgment against the defendants. Opposing the plaintiff's efforts to enforce the New York judgment in Washington, the defendants argued that

they did not consent to the contractual provision and that the alleged contract was invalid because it was not supported by consideration. The Washington Court of Appeals held:

> When a state's jurisdiction over the person of a defendant, whether domiciliary or not, is based on the latter's consent, the sister state in which the judgment is sought to be enforced may reexamine the validity of the consent on which claimed jurisdiction rests. This is true even though the existence of that consent was an issue triable or tried in the state in which the original judgment was entered. [*Id.* at 37.][4]

In order to determine whether the New York judgment was entitled to full faith and credit, the court considered the merits of the defendants' claim that, because the clause stating that disputes would be resolved using the New York simplified dispute resolution procedure had not been included in any of the other notes previously executed between the parties, the defendants did not consent to New York jurisdiction when one of the defendants signed the note. *Id.* at 38.[5]

---

[4] Although *Copeland* held that a court may reexamine the validity of the consent on which claimed jurisdiction rests even when that issue was tried in the foreign jurisdiction in which the judgment was entered, *Firedoor* held that a foreign judgment may not be attacked on jurisdictional grounds when the foreign court has determined in a contested hearing that it has jurisdiction to enter the judgment. Here, plaintiff does not argue that the issue of jurisdiction was determined by the California court in a contested hearing. Plaintiff concedes that the arbitration award and the California judgment were both entered without a contested hearing attended by defendants. Therefore, we need not address whether a foreign judgment may be attacked on the ground of a lack of personal or subject-matter jurisdiction when the foreign court has determined in a contested hearing that it has jurisdiction.

[5] The court held that the defendants' failure to read the note carefully was no excuse. *Copeland, supra* at 38. The court also considered the merits of the defendants' argument that there was no consideration and, therefore, no valid contract. However, the court found that the defen-

Here, we similarly conclude that the trial court properly examined whether a contract existed between the parties in order to determine whether the California court had jurisdiction to enter the judgment for plaintiff. The fact that defendants' jurisdictional argument was dependent on whether a contract existed between the parties did not transform it into an improper attack on the merits of the underlying judgment. As in both *Firedoor* and *Copeland,* the question whether the foreign court had personal jurisdiction over defendants was dependent on whether there was a valid agreement between the parties.[6] Because the alleged loan agreement contains both an arbitration clause and a clause consenting to California jurisdiction, the California judgment was enforceable only if defendants entered into a contract with plaintiff. We therefore conclude that, in the context of this action to enforce a foreign judgment under the UEFJA, the trial court did not err by inquiring whether a valid contract was executed between the litigants in order to determine whether the California court had personal jurisdiction over defendants.

The trial court concluded that because there was no valid contract between the parties that required arbitration in California, the California court lacked personal jurisdiction over defendants and the California judgment was therefore void. Plaintiff argues that the trial court erred in failing to recognize the existence of a valid contract for several reasons. Plaintiff argues that the good-faith estimate of closing costs was not

---

dants' antecedent debt was sufficient consideration. The court added that, "[t]he New York judgment being valid, any defenses on the merits, as opposed to questions relating to jurisdiction, may not be reexamined." *Id.* at 38-39.

[6] As discussed, we reject plaintiff's contention that there was a basis for personal jurisdiction independent from the parties' alleged agreement.

part of the contract and that the trial court erred in refusing to recognize that the loan agreement and arbitration clause alone, which defendants signed without modification, constituted a valid contract. However, the agreement plaintiff seeks to enforce specifically states:

> This loan approval letter shall have no force or effect whatsoever unless it is accepted by the borrower(s) no later than July 13, 2001[,] and until it is countersigned by an officer of Blackburne & Brown. After July 13, 2001, please call your loan officer.

"An offer comes to an end at the expiration of the time given for its acceptance." *Pakideh v Franklin Commercial Mortgage Group, Inc*, 213 Mich App 636, 640-641; 540 NW2d 777 (1995). Defendants did not sign and return the loan approval letter until July 26, 2001. "An offeree cannot accept, either through words or deeds, an offer that has lapsed." *Id.* at 641. Further, there is no indication here that plaintiff communicated to defendants that it was going to waive the expiration date contained in the loan agreement. "[A]n offeror cannot waive the lapse of his offer simply by choosing to disregard it." *Id.* Therefore, by signing the loan agreement, modifying and signing the good-faith estimate of closing costs, and returning those documents to plaintiff after plaintiff's offer had expired, defendants were not accepting plaintiff's lapsed offer, but were merely extending an offer for further negotiations, or, at best, a counteroffer. Although plaintiff's employee signed the documents, any acceptance of defendants' counteroffer by plaintiff was not communicated to defendants. Nothing else suggests that plaintiff manifested an acceptance of defendants' counteroffer. See *In re Costs and Attorney Fees*, 250 Mich App 89, 96-97; 645 NW2d 697 (2002) (" 'Under the principles governing contracts, an

acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.' *Kraus v Gerrish Twp*, 205 Mich App 25, 45; 517 NW2d 756 (1994), aff'd in part and remanded in part on other grounds 451 Mich 420; 547 NW2d 870 (1996).") Further, plaintiff never performed the agreement by refinancing defendants' loan. Therefore, the trial court correctly determined that the parties never entered a valid contract.

Plaintiff next argues that the trial court violated the parol-evidence rule when it examined the good-faith estimate of costs in deciding whether there was a valid agreement between the parties.[7] "The parol evidence rule may be summarized as follows: '[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.' " *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998), quoting *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990). Here, no contract was ever formed, so the good-faith estimate of closing costs did not contradict or vary the terms of an agreement. Instead, it was merely part of defendants' negotiations or counteroffer. Therefore, the parol-evidence rule does not apply in this case.

Plaintiff also argues that defendants were not entitled to rescind the arbitration agreement because,

---

[7] Although the trial court did not address this issue, we will briefly address this argument, as it involves a question of law and all the facts necessary for resolution have been presented. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004).

even if the contract were procured by fraud, defendants failed to take affirmative action to rescind the fraudulent contract. Plaintiff failed to raise this argument in the trial court.

> "Generally, this Court will not review issues that were not raised and decided by the trial court. However, there are exceptions to this general rule. This Court will review issues not raised below if a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case." [*Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004), quoting *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195; 412 NW2d 690 (1987) (citations omitted).]

We will briefly address this argument, as it involves a question of law and all the facts necessary for resolution have been presented.

Plaintiff is correct that " 'a person . . . who has been defrauded, must act promptly; and, if he would repudiate the contract, he must do nothing in affirmance of it after ascertaining the facts.' " *LeRoy Constr Co v McCann*, 356 Mich 305, 309; 96 NW2d 757 (1959), quoting *Merrill v Wilson*, 66 Mich 232, 243; 33 NW 716 (1887). However, the trial court did not conclude that defendants could rescind the contract because of fraud; rather, it determined that the alleged contract was void because it was never formed in the first place. Accordingly, plaintiff's argument that defendants were "not entitled to rescission is irrelevant and without merit." *G P Enterprises, Inc v Jackson Nat'l Life Ins Co*, 202 Mich App 557, 566; 509 NW2d 780 (1993).

Next, plaintiff argues that the trial court erred in determining that the California court did not have personal jurisdiction over defendants, because defendants had sufficient minimum contacts with California,

independent of the loan agreement's forum-selection clause, to establish personal jurisdiction in California.[8] Under the Due Process Clause, in order for a court to acquire personal jurisdiction over a nonresident defendant, there must be sufficient minimum contacts with the forum state.

> "First, the defendant must have purposefully availed himself of the privilege of conducting activities in [the forum state], thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with [the forum] to make the exercise of jurisdiction over the defendant reasonable." [*Jeffrey, supra* at 186, quoting *Modzy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

The minimum-contacts requirement protects a defendant from having to litigate in a distant or inconvenient forum, and "ensures that a state does not extend its judicial power beyond the limits imposed on all states by our federal system of government." *Jeffrey, supra* at 186, citing *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980). "The primary focus of personal jurisdiction is on 'reasonableness' and 'fairness.' " *Jeffrey, supra* at 186. "The defendant's own conduct and connection with the forum must be examined in order to determine whether the defendant should reasonably anticipate being haled into court there." *Jeffrey, supra* at 187. Thus, "[j]urisdiction may be properly exercised over a corporate defendant when it reaches beyond its own state and purposely avails itself of the privilege of exploiting

---

[8] Although the trial court explicitly declined to address this issue, we will briefly address this issue because it involves a question of law and all the facts necessary for resolution have been presented. *Brown, supra* at 599.

forum-based business opportunities." *Id.* California's long-arm statute allows California courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." *Belmont Industries, Inc v Superior Court of Stanislaus Co,* 31 Cal App 3d 281, 285; 107 Cal Rptr 237 (1973), quoting Cal Civ Pro Code 410.10.

Here, defendants sought to refinance their commercial property located in Michigan. Defendants' mortgage broker referred them to plaintiff, a California corporation. Plaintiff sent documents to Michigan, and defendants returned documents to California. Defendants also allegedly had telephone conversations with an employee of plaintiff. Plaintiff does not allege any other factual basis to support California's jurisdiction over defendants.

In *Belmont Industries, supra* at 284, 288-289, the California Court of Appeals held that accepting a bid for drafting services from a California company, telephoning California, mailing documents to and from California, receiving a visit from a representative of the California company at the Pennsylvania job site, executing a purchase order, and receiving the requested drawings did *not* provide the minimum contacts necessary to make the Maryland corporate defendant subject to jurisdiction in California.[9] Defendants in the present

---

[9] We disagree with plaintiff's argument that *Belmont Industries* was impliedly overruled by *Burnham v Superior Court of Marin Co, California,* 495 US 604, 607-608, 610-616; 110 S Ct 2105; 109 L Ed 2d 631 (1990). In *Burnham,* the Court held that, in accordance with longstanding precedent, a nonresident defendant who was personally served in California could not claim that California did not have jurisdiction over him because he lacked "minimum contacts" with California. *Belmont Industries,* however, did not involve a nonresident defendant who was personally served in the state that the plaintiff alleged had jurisdiction over him. In *Burnham, supra* at 618-619, the Supreme Court merely

case have even less contacts with California than did the defendant in *Belmont Industries*.

We agree with the holding in *Belmont Industries* and hold that there is no basis for concluding that defendants had established sufficient minimum contacts with California to give the California court personal jurisdiction over defendants independent of the alleged loan agreement.[10]

Affirmed.[11]

---

stated that, "[a]s *International Shoe* [*Co v Washington*, 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945)] suggests, the defendant's litigation-related 'minimum contacts' may take the place of physical presence as the basis for jurisdiction," but physical presence is also sufficient to establish jurisdiction. Thus, *Burnham* did not overrule the "minimum contacts" test, but only reaffirmed the physical presence test for acquiring personal jurisdiction over a nonresident defendant.

[10] Defendants characterize the California judgment as a default judgment and argue that under MCL 691.1173, the California judgment may be attacked pursuant to MCR 2.603(D), governing motions to set aside default judgments, and MCR 2.612(C), governing motions for relief from judgment. However, because the trial court correctly determined that the California judgment was void for lack of personal jurisdiction over defendants, it is unnecessary to reach the broader issue whether relief from judgment, available under the court rules to challenge domestic judgments, can be considered in the context of a UEFJA action.

[11] Because we conclude that the trial court properly determined that the California court did not have personal jurisdiction over defendants, we need not address plaintiff's argument regarding subject-matter jurisdiction.