*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YETTIE SCHULTHESS COSTNER,

        Plaintiff-Appellant,

v

DONALD C. BURNIAC and,
LINDA ANN BURNIAC,

        Defendants-Appellees.

UNPUBLISHED
April 30, 2020

No. 345464
Wayne Circuit Court
LC No. 16-011072-CZ

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's September 2018 order granting defendants' motion to quash/relief from judgment. We reverse and remand for entry of an order denying defendants' motion for relief from judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff initiated a lawsuit in 2009 against defendants in Georgia when they allegedly breached an agreement between the parties for the purchase of plaintiff's certified public accounting business in Georgia. That matter concluded with the entry of a final judgment against defendants in 2013. That judgment was domesticated in Michigan in 2016. In 2018, defendants filed an action in Louisiana against plaintiff and several others. They alleged claims of breach of contract, defamation, fraud, conversion, and nullity of the October 2013 Georgia judgment. That matter led to a decision from the Courts of Appeal of Louisiana's First Circuit, *Burniac v Costner*, 277 So3d 1204; 2018-1709 (La App 1 Cir 5/31/19). The general facts were set forth in that case:

> In 2008, Yettie S. Costner executed an asset purchase agreement wherein she sold a tax preparation and accounting business that she operated in Georgia to Georgia Management Enterprises, Inc. ("GME"). The business sold included the existing clients, goodwill, equipment, software license rights, and Mrs. Costner's agreement not to compete for a period of five years. The agreement provided for the purchase of the business by an initial payment of $1,000, plus 119 additional payments of $1,000 each, to be paid in monthly installments.[1] Shortly after selling

-1-

the business, Mrs. Costner and her then-husband, Henry Costner, moved to Louisiana.

In July 2009, Mrs. Costner filed suit in Georgia against GME, Donald Burniac (as the incorporator of GME), Linda Burniac (as the president of GME), and Kurt Hines (as an employee of GME), for breach of contract, tort damages, and injunctive relief. In the Georgia complaint, Mrs. Costner alleged that in addition to the aforementioned asset purchase agreement, there was an agreement wherein GME arranged to lease the real property in which Mrs. Costner formerly operated her business. She further alleged that she and Mr. Burniac entered into a verbal contract whereby Mrs. Costner agreed to perform tax and accounting work for GME as an independent contractor. Despite these agreements, Mrs. Costner claimed that she stopped receiving lease payments and payments for the purchase of the business in March 2009. She also alleged that GME, the Burniacs, and Mr. Hines were liable for misrepresentation and fraud for failing to perform services for which clients had paid and for failing to compensate her for work she performed. Hence, in addition to damages for breach of contract and tort, Mrs. Costner sought mandatory injunctive relief to regain access to the real property leased to GME and to the business assets sold, including her former clients' files, computer software, data, and equipment. She also requested permission to perform tax and accounting services for her former client as part of the injunctive relief requested. [*Burniac*, 277 So3d at 1206-1207.]

---

[1] Per the agreement, Mrs. Costner was also entitled to collect an annual contingent payment of ten percent of GME's gross sales, but only for gross sales in the range of $120,000 to $150,000 per fiscal year for a period of ten years.

---

Plaintiff's Georgia complaint alleged that defendants resided, conducted business, and committed tortious acts and omissions in Darien, Georgia, at the time her claims arose. Plaintiff also alleged that the Georgia court had personal jurisdiction over GME, Hines, and defendants. Through attorney Mark Johnson and Abney Whitehead, defendants, GME, and Hines then filed an answer and affirmative defenses, and GME filed its own counterclaims against plaintiff. Defendants admitted that before April 2009 they resided at the alleged Georgia residence, but denied committing any acts or omissions as alleged. Defendants neither admitted nor denied that the Georgia court had personal jurisdiction over them or Hines on the basis that plaintiff's complaint sought a legal conclusion defendants were unable to make. Defendants also asserted that plaintiff's allegations regarding personal jurisdiction were "denied by operation of law."

Two weeks after filing defendants' answer and affirmative defenses, attorney Abney Whitehead, filed an acknowledgment of service indicating that GME, the Burniacs, and Hines "acknowledge[d] personal service in said cause, receipt of copy of complaint and summons, and waives further service." Over the coming months attorney Mark Johnson filed responses to plaintiff's discovery requests including individual responses to interrogatories on behalf of Linda Burniac and Donald Burniac (although the content of those responses is unknown), and, along with plaintiff's attorney, a joint motion for the extension of discovery.

Over a year later, in May 2011, Whitehead withdrew from representing defendants, GME, and Hines in the Georgia litigation, "with the express permission and consent of [GME], Donald C. Burniac, Linda A. Burniac, and Kurt Hones . . . ." The following February, defendants and plaintiff filed a joint stipulation to waive trial by jury. In January 2013, Johnson filed a motion to withdraw with the Georgia court. Johnson asserted that he had repeatedly attempted to reach GME, the Burniacs, and Hines, by telephone call, e-mail, and a certified letter without success. The Georgia court entered an order allowing Johnson to withdraw as defendants' attorney in mid-February 2013.

Defendants did not appear for a March 2103 pretrial conference. The trial court subsequently granted a motion by plaintiff to dismiss defendants' answer and counterclaim without prejudice, and entered an order requiring defendants, GME, and Hines to "appear and show cause before me on the 31[st] day of October, 2013, at 9:00 o'clock, A.M., as to why the relief and prayers of the Plaintiff should not be granted as stated in her complaint." When defendants failed to appear, the Georgia court entered the following final judgment against defendants, GME, and Hines:

> This action came on for a hearing before the court on October 31, 2013, the Honor Robert L. Russell, III, presiding, and the issues having been duly heard and tried, and a decision having been duly rendered;
>
> Plaintiff having shown personal and subject matter jurisdiction is proper in this court; that Plaintiff's right of action existed on the commencement of this suit; all necessary parties being made a party hereto; all Defendants having been served or acknowledged service; Defendants having made an appearance in this court; Defendants having failed to participate in discovery and having failed to appear in person or by counsel upon the call of this case, Defendants' answers and counterclaim having previously been stricken; and Plaintiff having proved her causes of actions and damages;
>
> IT IS ORDERED AND ADJUDGED that, with respect to Counts II, III, V, and IX of Plaintiff's complaint, that the Plaintiff, Yettie Schulthess Costner, recover from the Defendants Georgia Management Enterprises, Inc., Donald C. Burniac, Linda A. Burniac, and Kurt Hines, jointly and severally, the sum of $222,500.00 with interest thereon as provided by O.C.G.A § 7-4-12.
>
> IT IS FURTHER ORDERED AND ADJUDGED that, with respect to Counts VI (fraud) and VII (punitive damages) of Plaintiff's complaint, that the Plaintiff, Yettie Schulthess Costner, recover from the Defendants, Georgia Management Enterprises, Inc., Donald C. Burniac, Linda A. Burniac, and Kurt Hines, the sum of $360,000.00, individually from each such named defendant, with interest thereon as provided by O.C.G.A. § 7-4-12.
>
> Pursuant to O.C.G.A. § 7-4-12, such judgment shall bear annual interest upon the principal amount of such judgment at a rate equal to the prime rate as published by the Board of Governors of the Federal Reserve System, as published in statistical release H.15 or any publication that may supersede it, on the day this

judgment is entered plus 3 percent. Such interest shall apply to the state judgment amount and such interest shall be collectable as part of, and in addition to, the amount of the judgment.

In the May 2013 term of this Court, so ordered and adjudged, this 31st day of October, 2013.

At some point thereafter, plaintiff discovered defendants resided in Michigan. On August 30, 2016, plaintiff filed an affidavit and notice of entry of foreign judgment in the Wayne Circuit Court to have the Georgia judgment enforced in Michigan. On September 1, 2016, the court clerk signed the notice of entry and accepted the foreign judgment for filing. The affidavit and notice of entry were served by plaintiff on defendants at a post office box in Plymouth, Michigan. Enforcement of the domesticated judgment was stayed for 21 days. Three days before the Georgia judgment became enforceable in Michigan, "the Burniacs executed a warranty deed on September 19, 2016, to transfer a piece of real property that they owned in Michigan [10075 Red Maple Drive, Plymouth, MI,] to a Louisiana irrevocable trust [Laurel Oaks Co]." *Burniac*, 277 So3d at 1207. On September 26, 2017, a writ of garnishment was issued for Donald Burniac's tax return, resulting in the subsequent garnishment of $52,975 on October 22, 2017. On September 14, 2017, after discovering the transfer while investigating defendants' finances, plaintiff filed an action in Michigan "to void the warranty deed and recover the real property that the Burniacs transferred to the Louisiana trust." *Burniac*, 277 So3d at 1207.

Following a November 2017 order from another Wayne Circuit Court judge permitting alternate service in plaintiff's case to void the warranty deed, defendants and GME filed suit against plaintiff (and others) in Louisiana in January 2018. *Burniac*, 277 So3d at 1207-1208. Six months after filing suit in Louisiana, defendants filed the instant motion to quash or for relief from judgment.

In their motion, defendants argued that the Georgia judgment was void for lack of service and personal jurisdiction and, as a result, was unenforceable in Michigan. Defendants also contended that although the acknowledgment of service at issue was signed by Whitehead, defendants' affidavits established that they never hired an attorney in the underlying case and did not authorize anyone to accept service on their behalf.

Plaintiff responded that defendants' motion should be denied under MCR 2.603 and MCR 2.612. Relevant to this appeal, plaintiff argued that relief from judgment under MCR 2.612 was inappropriate because the motion was untimely, having not been filed until nearly two years after domestication of the Georgia judgment in Michigan, and was not justified under the catchall provision of MCR 2.612(C)(1)(f). Plaintiff also argued that defendants' motion was an improper collateral attack, and that defendants had waived the defense of lack of personal jurisdiction. After argument, the trial court granted defendants' motion and denied plaintiff's request for sanctions, explaining that it relied on defendants' brief, MCR 2.612(C)(1)(d), and *Blackburne & Brown Mortg Co v Ziomek*, 264 Mich App 615; 692 NW2d 388 (2004) in arriving at its decision.

-4-

## II.  MCR 2.612'S REASONABLE TIME REQUIREMENT

Plaintiff first argues on appeal that the trial court erred by granting defendants' motion to quash or for relief from judgment because defendants did not file the motion within a reasonable time.  We agree.

This Court reviews for an abuse of discretion a trial court's ruling on a motion for relief from judgment.  *Dep't of Environmental Quality v Waterous Co*, 279 Mich App 346, 364; 760 NW2d 856 (2008).  "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes."  *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012).  Additionally, " '[t]he proper interpretation and application of a court rule is a question of law, which we review de novo.' "  *Rose v Rose*, 289 Mich App 45, 49; 795 NW2d 611 (2010), quoting *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009) (alteration in original).

MCR 2.612(C)(1)(d) provides that a trial court can relieve a party from a "final judgment, order, or proceeding" if "[t]he judgment is void."  MCR 2.612(C)(2) states that the motion for relief from judgment under that subrule "must be made within a reasonable time, and, for the grounds stated in subrules  (C)(1)(a), (b), and (c), within one year after judgment, order, or proceeding was entered or taken."

When there is a want of jurisdiction over the parties or the subject matter, no matter what formalities may have been taken by the trial court, the action is void because of its want of jurisdiction.  Consequently, its proceedings may be questioned collaterally as well as on direct appeal.  *Altman v Nelson*, 197 Mich App 467, 472–73; 495 NW2d 826 (1992); see also *Nash v Salter*, 280 Mich App 104, 120; 760 NW2d 612 (2008), quoting *Blackburne*, 264 Mich App at 620-621 (" '[C]ollateral attack may be made in the courts of this state by showing that the judgment sought to be enforced was void for want of jurisdiction in the court which issued it.' ") (Alteration in original).  And, "a motion that seeks to set aside a judgment because it is void is not subject to the one-year requirement.  Instead, such a motion may be heard by the trial court if it is brought within a reasonable time."  *Inverness Mobile Home Cmty, Ltd v Bedford Tp*, 263 Mich App 241, 247; 687 NW2d 869 (2004).  Whether a motion was filed within a reasonable time depends on the circumstances of the case.  See, e.g. *Laffin v Laffin*, 280 Mich App 513, 522 n 1; 760 NW2d 738 (2008).

In this matter, the Georgia judgment was entered in October 2013.  Plaintiff asserts that in 2015, she discovered that defendants were residing in Michigan.  She therefore filed an affidavit and notice of entry of foreign judgment on August 30, 2016, which also contained a proof of service of the document upon defendants.  The judgment was thereafter domesticated in Michigan on September 1, 2016.  Plaintiff executed several writs of garnishment on various purported accounts and assets of defendants throughout 2016.  Of note, one of the writs was sent to Comerica Bank, of whose Detroit legal department filed a garnishee disclosure on December 8, 2016.  In the disclosure, Comerica indicated that Donald Burniac held an account with it, but that the account was not subject to garnishment because his social security benefits were deposited into that account.  Also on the disclosure, Comerica certified that it had mailed or personally served a copy of the garnishment to Donald Burniac on December 2, 2016 and the disclosure to him on December 8, 2016.  Citizens Bank was also served with a writ of garnishment and while it stated in its

disclosure that defendants' account had been closed, it also certified that it sent a copy of the disclosure to defendants on January 17, 2017.

In September 2017, plaintiff initiated an action against defendants in Wayne County, Michigan, circuit court asserting that defendants had fraudulently transferred title to Michigan real property from their names to a trust in order to avoid the October 2013 Georgia judgment (and domestication of the same in Michigan). The Georgia judgment was attached to the complaint.

Plaintiff successfully garnished defendant Donald Burniac's Michigan income taxes of over $52,000.00 in October 2017. Defendants filed a lawsuit against plaintiff in January, 2018. In their complaint, they reference the Georgia matter and assert that Georgia did not obtain personal jurisdiction over them such that any judgment in that matter in Georgia was void.

Defendants did not file their motion for relief from judgment until July of 2018. At the hearing on defendants' motion, plaintiff indicated that defendants claimed they did not receive mail at a Michigan post office box that the USPS indicated was in their names. In response, defendants' counsel stated, "Your Honor, I think there's a very big [mis]understanding here on Plaintiff's counsel's behalf . . . . we're not challenging the service or the procedure of the domestication." Defendants' counsel reaffirmed, "At no point did we say that they didn't receive service of domestication, I don't know where that's coming from."

Based upon the above, defendants were aware of the Georgia judgment at the very least by December of 2016.[1] Knowledge on the part of the defendants may be considered when determining whether a motion for relief from judgment was made within a reasonable time, as required by MCR 2.612(C)(2). In *Laffin*, 280 Mich App at 522 n 1, for example, this Court noted that a motion for relief from judgment brought five years after the judgment was entered but only 3 months after notice of the underlying issue, was brought within a reasonable time.

Defendants have failed to explain or offer any reason why they failed to take any action with respect to the Georgia judgment until near five years after it was entered and until nearly two years after the judgment was domesticated in Michigan. According to their counsel in the instant action, there was no question that they were properly served with the September 2016 action to domesticate the Georgia judgment here. The trial court, however, did not address the timeliness of defendants' motion. Indeed, the trial court gave no analysis in rendering its decision on defendants' motion, stating only that it was granting defendants' motion on the basis of the reasons articulated in defendants' motion, MCR 2.612(C)(1)(d), and *Blackburne*.

---

[1] This Court notes that GME, a company owned and operated by defendants, was also part of the Georgia lawsuit. At no time did GME or defendants assert that the Georgia court failed to obtain jurisdiction over GME. Additionally, counsel of record in the Georgia lawsuit was the same for defendants and GME and there has been no claim that counsel did not have the authority to act on behalf of GME. Presumably, defendants would have been the persons to obtain the services of an attorney on behalf of GME. Thus, it is difficult, if not impossible, to believe that defendants were unaware of the Georgia judgment until the matter was pursued in Michigan even if, as they assert, they did not give GME's counsel permission to represent them in the Georgia matter.

Even taking into account that defendants appear to have moved to different states several times over the past few years, their defense counsel's acknowledgement that defendants were served in the domestication matter, coupled with the years' long length of time between entry of the Georgia judgment and defendants' filing of their motion, leads to the inescapable conclusion that defendants have failed to establish that their motion for relief from judgment was brought within a reasonable time. As a result, the trial court's grant of defendant's' motion did not fall within the realm of reasonable and principled outcomes and thus constituted an abuse of discretion.

Reversed and remanded for entry of an order denying defendants' motion for relief from judgment. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto