*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. L. KHAN, Minor.

UNPUBLISHED
November 18, 2024
1:54 PM

No. 370871
Wayne Circuit Court
Family Division
LC No. 2023-001309-NA

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, LK, under MCL 712A.19b(3)(b)(*i*) (sibling suffered physical injury caused by parent and likelihood of future harm) and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned home). We affirm.

## I. BACKGROUND

Respondent is the father of two children: KK and LK. On August 15, 2023, petitioner, the Department of Health and Human Services (DHHS), filed a petition for termination of respondent's parental rights to LK.[1] The petition details an incident that occurred on July 7, 2023. The petition alleges that on that date, LK's mother, Chelsey Ann Cremona, was trying to leave the home that she and the children shared with respondent due to a history of physical and verbal abuse perpetrated against them by respondent. The petition states that respondent convinced Cremona to go back inside the home with the children and at that point he tried to force her down the basement. The petition continues that KK yelled for respondent to not hurt Cremona, so respondent grabbed KK, threw her to the floor, and held her down by the neck, choking her with one hand while holding a knife in the other hand and threatening to kill everyone in the house.

---

[1] KK has a different mother than LK, but both KK and LK had been living with respondent. The DHHS petitioned to terminate respondent's parental rights to KK in a separate case, but that case is not at issue in this appeal.

The petition alleges that Cremona intervened by stabbing respondent in the chest to get him off of KK. The petition states that when the police arrived and interviewed Cremona, she reported multiple other domestic assaults perpetrated on her by respondent including him holding a gun at her in the past and that her body showed bruises on her legs and arms that she stated were from respondent kicking and punching her. The petition also includes disclosures by Cremona of prior physical and verbal abuse by respondent, including an incident in May 2023 when respondent was upset that he was woken up by LK, so he told Cremona that he hated LK, wished he was never born, and wanted to smash his skull and put him under his car tire and drive.

A preliminary hearing was held on the same date that the petition was filed. Vivian Jones, a Children's Protective Services (CPS) investigator, testified that respondent had acted homicidally towards his family on July 7, 2023. Jones testified that following respondent's strangling of KK, his continual threats that he would kill the family and himself while holding a knife, and Cremona's intervention, respondent was arrested and taken to the hospital. Criminal charges were still pending. Jones testified that she worked to ensure that LK and KK were placed with their mothers. The trial court found that it would be clearly contrary to the welfare of KK and LK to be in the same house as respondent. Safety plans were implemented for LK and KK, and respondent was ordered by the criminal court not to have contact with LK or KK and their mothers. The trial court authorized the petition.

A bench trial on the DHHS's petition to terminate respondent's parental rights was held on November 7, 2023. Respondent pleaded no contest to the court's jurisdiction and statutory grounds due to criminal liability. The trial court entered an order of adjudication and found by clear and convincing evidence that there were statutory grounds to exercise jurisdiction over LK and KK.

The best interests hearing took place on March 27, 2024. Cremona testified that she had known respondent for about three years and that LK was their child. She had lived with respondent, KK, LK, and her other child, LC, from February 2021 until July 7, 2023. Cremona testified that respondent was physically and verbally abusive towards her starting after the birth of LK. Cremona testified that respondent had once put a rubber band around LK's leg until his foot began to turn purple. She was afraid that he would further hurt LK. Cremona testified that respondent was verbally abusive towards KK and LK the "majority of the time." Cremona testified that respondent said that he would run over LK with his car when LK woke respondent at night by crying. Cremona also stated that KK said that respondent had told KK that he would kill or hurt her if she told Cremona that respondent was hurting her. Cremona stated that respondent would rarely play with KK and never assisted in parenting LK. Respondent would occasionally pick LK up, but they did not have a bond, Cremona testified. Cremona added that KK said that she was scared of respondent and did not want to see him. Cremona was scared to leave respondent because of his threats and physical abuse.

Cremona also testified regarding the incident on July 7, 2023, which led to the present case. Cremona stated that she was attempting to leave respondent. In response, respondent forced her into their house and attacked her. KK witnessed this, and respondent "strangled [KK] and put a knife to her." Cremona testified that respondent said that he was going to kill KK and the other children. In response, Cremona attacked respondent because she was afraid he was going to kill KK. She did not think it would be safe for respondent to be around KK or LK. Cremona did not

-2-

think that there was anything the court could do that would make it safe for respondent to be around KK or LK. Cremona had suggested that respondent go to therapy in the past and he said "that anything like that is a joke." She said that the children would suffer mentally if respondent's parental rights were not terminated.

On cross-examination by respondent's counsel, Cremona stated that she was not aware of respondent having a history of mental health issues. She stated that he was very angry and had gotten progressively worse. Cremona would not change her opinion on the termination of respondent's parental rights if he underwent mental health treatment or if he was not around for an extended period of time. She believed that respondent did not think anything was wrong with his behavior.

The trial court found that, while respondent had been evasive during his clinic evaluation, this made sense because of the ongoing criminal matter related to the July 7, 2023 incident. The trial court found no bond between LK and respondent. The trial court also stated that respondent had shown no ability to parent LK and that respondent could not provide LK with a safe and stable home due to his verbally and physically abusive behavior. The trial court stated that LK's presence during the abuse of Cremona is damaging to LK. The trial court also found that LK would have stability and finality with Cremona and that it was in LK's best interests to remain with Cremona. The trial court entered an order terminating respondent's parental rights to LK.

This appeal followed.

## II. BEST INTERESTS

On appeal, respondent argues that termination of his parental rights was not in the best interests of LK. Respondent failed to support his argument with any facts or case law, and instead discussed reasonable efforts, when the focus of best-interests analysis is on the child, not the parent. Therefore, this Court considers his argument abandoned. *Blackburne & Brown Mortg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004) ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position. Insufficiently briefed issues are deemed abandoned on appeal.") (Quotation marks and citations omitted.) However, even addressing his argument, we disagree.

This Court reviews "for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the child's best interest must be established by a preponderance of the evidence. *Id.* at 733. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*,

341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

The trial court did not clearly err when it determined that termination of respondent's parental rights was in LK's best interests. Cremona testified at length regarding the physical and verbal abuse that she and the children, including LK, suffered from respondent. Cremona testified that respondent had hit her with a belt, choked her, beat her, and dragged her on the floor in the presence of LK and the other minor children. Cremona further testified that respondent and LK did not have any bond as respondent did not engage with LK until he was about one, and even after that, respondent spent very little time with LK. Cremona testified that she did all of the parenting of LK and that LK was "thriving" in her solo care. Thus, the trial court did not clearly err in finding that respondent's home was a dangerous, unsafe, and unstable environment for LK due to respondent's verbally and physically abusive behavior. The trial court found that respondent had shown no ability to parent LK and that Cremona could provide LK with the permanency, stability, and finality that he needed. The trial court further found that it was in LK's best interests that he remain in the care of Cremona. The preponderance of evidence supports the finding that termination of respondent's parental rights was in LK's best interests.

## III. REASONABLE EFFORTS

Next, respondent argues that the trial court erred by failing to provide him with a treatment plan to assist him with his mental health issues and parenting skills. Respondent further argues that his mental illness required reasonable accommodations tailored to his disability.

A respondent must raise the issue of reasonable reunification efforts before termination of his or her parental rights to preserve the issue. *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022). The issue of respondent's lack of service plan was not raised before his parental rights were terminated, and thus, it is unpreserved. Unpreserved claims in termination cases are reviewed for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted.) Typically, an error affects substantial rights if it causes prejudice by affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). The party asserting plain error carries the burden to show prejudice. *In re MJC*, ___ Mich App at ___; slip op at 2.

" 'Generally, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights.' " *In re Sanborn*, 337 Mich App at 258

(brackets and citation omitted). However, if there are aggravating circumstances under MCL 712A.19a(2), no efforts to reunify the child and parent are required. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). Aggravating factors include the determination that the parent abused the child or a sibling, and the abuse included serious physical harm or attempted murder. *In re Mason*, 486 Mich at 165; MCL 722.638(1)(a).

The trial court did not plainly err in not providing respondent with a treatment plan as aggravating circumstances existed in this case, thus no efforts to reunify respondent and LK were required. Respondent was accused of abusing KK, and the abuse included him attempting to murder KK by strangulation. MCL 722.638(1)(a). Petitioner requested termination at the initial dispositional hearing as respondent was the suspected perpetrator of the abuse. *In re Barber/Espinoza*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 369359); slip op at 7. The trial court found that respondent injured KK by choking her, putting a knife to her, and threatening to kill her and the rest of the family, including LK. KK is LK's half-sibling. Thus, the record plainly supports that reasonable efforts were not required because the circumstances listed in MCL 712A.19a(2)(c) were met.

Similarly, respondent's argument that the DHHS did not accommodate his mental illness is misplaced because reasonable efforts were not required in the first instance. While respondent is correct that "efforts at reunification cannot be reasonable under the Probate Code unless the Department modifies its services as reasonably necessary to accommodate a parent's disability," *In re Hicks/Brown*, 500 Mich 79, 90; 893 NW2d 637 (2017), our Supreme Court made clear that this rule only applies in cases where reasonable efforts are required, *id.* at 85 n 4. As noted above, the DHHS never had the obligation to reunify respondent with LK in the first place, which meant that the DHHS was not required to provide services. Therefore, respondent cannot prevail on a claim that the DHHS failed to make reasonable accommodations for services it was not obligated to provide. Accordingly, the trial court did not plainly err when it terminated respondent's parental rights without first providing him with services in compliance with the Americans with Disabilities Act.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace