*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. MCGHEE, Minor.

UNPUBLISHED
July 20, 2023

No. 364230
Oakland Circuit Court
Family Division
LC No. 2022-884717-NA

Before: CAMERON, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating her parental rights to the minor child, MAM, under MCL 712A.19b(3)(g) (failure to provide proper care or custody), MCL 712A.19b(3)(i) (parental rights were terminated to a sibling because of serious or chronic neglect and respondent has failed to rectify those conditions), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

On April 11, 2022, petitioner, the Department of Health and Human Services (DHHS), filed a permanent custody petition requesting that the trial court take jurisdiction over MAM, find a statutory basis for termination of respondent's rights under MCL 712A.19b(3)(g), (i), and (j), and find that termination is in MAM's best interests. The petition alleged that (1) respondent had an extensive history with Children's Protective Services (CPS), which resulted in the termination of her parental rights to four other minor children in 2005 and 2018 due to her significant substance use, unstable housing, and physical neglect, (2) respondent tested positive for marijuana, benzodiazepines, and opiates on March 13, 2022, (3) MAM was born with a positive meconium screen for cocaine and opiates, and consequently suffered from withdrawals and Neonatal Abstinence Syndrome (NAS), and (4) while the father of MAM signed an affidavit of parentage, both respondent and the father acknowledged that the biological father of MAM is unknown. The

---

[1] While the father was originally designated as a respondent, he is not a party to this appeal. Accordingly, we simply refer to respondent-mother as "respondent" and respondent-father as "the father."

petition further alleged that (1) respondent did not seek any prenatal care or obtain a crib, car seat, clothing, or any other necessities to provide for the care and custody of MAM, before or after her birth, (2) respondent did not possess adequate housing or employment, and (3) respondent sustained a brain injury in 2020 because of a nonfatal drug overdose, which negatively impacted her short-term memory and overall ability to function.

Following a preliminary hearing, a referee authorized the petition and ordered supervised parenting time for respondent, while MAM was placed in a nonrelative foster home.

On September 19, 2022, a combined adjudication and termination hearing was held before a referee. Petitioner first requested that the referee take judicial notice of the three previous cases in the Oakland County Circuit Court, which addressed the termination of respondent's parental rights to the four other children. Petitioner further moved to admit the hospital records of respondent and MAM. The referee agreed to take judicial notice of the legal file associated with the three previous termination cases, but excluded the relevant social files. The referee additionally admitted the two medical records concerning respondent and MAM.

Sara Peoples, a CPS investigator, testified on behalf of petitioner. Peoples stated that she first met respondent in 2017, and that she was aware of respondent's history with CPS. Peoples testified that she received a CPS complaint concerning MAM because she was born positive for cocaine and opiates and suffered from withdrawals. Peoples stated that she interviewed respondent, but respondent did not say much and reported having a brain injury. Peoples said that respondent was unable to respond to questions concerning her substance use, previous terminations, or the days of birth of the older children.

Peoples testified that while respondent expressed that she hoped to care for MAM following her birth, respondent did not have the basic necessities required such as a safe place for MAM to sleep, a car seat, diapers, or formula. Peoples explained that petitioner was requesting the termination of respondent's parental rights to MAM because respondent had an extensive history with CPS and a long history of substance, unstable housing, and physical neglect of the previous four children. Peoples further testified that she was concerned about respondent's overall ability to care for MAM because of respondent's brain injury. Peoples testified that respondent admitted that she did not receive any prenatal care because she found out she was pregnant approximately a month before she gave birth.

Peoples additionally testified about respondent's interactions with MAM during supervised parenting time, and stated that respondent was very uncomfortable holding the baby and could not move around while holding her. Peoples also testified that respondent

> had a difficult time making a bottle for the baby. [Peoples] had to repeat several times the steps that [respondent] had to make, and it was adding two ounces of water and one scoop of formula to the bottle. And she—she was having a difficult time even managing that.

Peoples said that she was unsure whether respondent's condition was something that she could work through and improve with a case service plan.

The referee found that there were statutory grounds to exercise jurisdiction over MAM pursuant to MCL 712A.2(b)(1) and (2) because of (1) respondent's lack of prenatal care, (2) respondent's substance abuse during pregnancy, (3) the previous terminations of the parental rights of respondent to four other children, and (4) respondent's lack of independent, adequate housing and a legal source of income.

The referee then proceeded to the termination phase of the hearing. Following the parties' arguments, the referee determined that there were statutory grounds to terminate respondent's parental rights to MAM under MCL 712A.19b(3)(g), (i), and (j). With regard to MCL 712A.19b(3)(g), the referee stated that while there was evidence that respondent had a brain injury, he did not hear any evidence that, because of that injury, respondent was unable to work or gain employment. Furthermore, in reviewing respondent's three prior terminations cases, the referee found that respondent had a history of not being able to take care of children. The referee also found that the evidence clearly supported that respondent could not provide proper care for the child due to her substance abuse, lack of income, and lack of housing.

Concerning MCL 712A.19b(3)(i), the referee found that petitioner established by clear and convincing evidence that (1) respondent's rights to the four other children were terminated due to serious and chronic neglect, which was demonstrated in those cases by respondent's lack of income, lack of housing, and substance abuse issues, and (2) respondent had still not rectified those conditions. In making this finding, the referee emphasized that there was no evidence that respondent had even taken the initial steps to begin rectifying those conditions, such as by engaging in substance abuse treatment.

The referee also found that petitioner established grounds for termination under MCL 712A.19b(3)(j). The referee found that there was a reasonable likelihood that MAM would be harmed if returned to respondent because respondent had been struggling with income, housing, and substance abuse for well-over a decade, and there was no sign of those issues being rectified within a reasonable time.

On November 1, 2022, a best-interests hearing was held before a referee. Nicole Rowley, a foster care case manager assigned to MAM and respondent, testified that she provided respondent with assistance obtaining legal documentation for herself, such as an identification card. With regard to respondent's parenting ability, Rowley stated the following:

> So [respondent] had difficulty with basic child-rearing practices and infant care. For example, due to [respondent's] short-term memory loss, [Rowley] was required to remind her frequently that it wasn't time for [MAM] to be fed, there were a couple instances where [respondent] had forgotten whether she had changed [MAM's] diaper or not, and you know, stated that she did although she didn't. And so [Rowley] was required to remind her that her diaper needed to be changed, and so on.

Rowley testified that respondent's dementia and short-term memory loss as a result of her 2020 nonfatal opioid overdose impacted her ability to provide for the care and custody of MAM in the present and future. Rowley did not believe that respondent could provide permanency, stability, and finality in MAM's life because respondent rights were terminated to four other children and

-3-

the reasons that MAM was brought into care were the same reasons for respondent's prior terminations. Rowley believed that MAM would be at a continued risk of harm if placed in respondent's care due to respondent's severe substance abuse history. Rowley further expressed that there were no services that the DHHS could provide to respondent to alleviate any of the concerns within a reasonable period of time. Finally, Rowley testified that she previously discussed substance abuse treatment options with respondent and made recommendations, and while respondent indicated that she was willing to participate in a program if required by the court, respondent never provided any proof of enrollment.

Brenda Mahoney, a foster care worker, observed respondent during supervised parenting time, and testified at the best interests hearing that respondent required redirection and relied on the father to remind her of when diaper changes and feedings were necessary and to help her with those tasks. Mahoney did not believe that respondent's need for redirection could be rectified through parenting classes due to respondent's memory issues. For example, Mahoney testified that respondent inadvertently fed MAM too much and she got sick, despite being told MAM's feeding schedule and the plan to avoid overfeeding. Mahoney testified that she believed that there was a risk of harm if MAM was returned to respondent because she failed to mitigate the circumstances that lead to MAM's removal, and because respondent was "a vulnerable adult" who may be unable to adequately care for MAM, who was "a very vulnerable child."

On November 9, 2022, the trial court determined that petitioner established, by a preponderance of the evidence, that termination of respondent's parental rights was in MAM's best interests. The trial court entered the final order on November 17, 2022, terminating respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

Respondent failed to raise the issue of statutory grounds in her questions presented and merely stated under her best interests argument that the trial court erred in finding statutory grounds for termination. Therefore, the Court considers this argument to be abandoned. *Blackburne & Brown Mortg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004) ("Insufficiently briefed issues are deemed abandoned on appeal.") (Quotation marks and citation omitted.) See also *In re Rippy*, 330 Mich App 350, 362; 948 NW2d 131 (2019), citing *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008) ("This issue is not contained in the statement of questions presented; it is therefore deemed abandoned."). However, addressing this issue for the sake of thoroughness, we disagree with respondent.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's ruling that a statutory ground for termination has been proved by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

Pursuant to MCL 712A.19b(3)(i), the trial court found that there was clear and convincing evidence of the previous termination of respondent's parental rights to four other children due to

serious and chronic neglect, which was demonstrated by respondent's substance abuse issues and lack of income, housing, and ability to take care of children. The trial further found that respondent had not rectified those conditions by the time the termination petition was filed as to MAM. The trial court determined that respondent did not attempt to resolve her substance abuse issues by engaging in any substance abuse treatment or drug screens. These findings are all amply supported by the record, including the court files from the previous terminations, the hospital records following MAM's birth, and the testimony of Peoples. We therefore conclude that the trial court did not clearly err when it found by clear and convincing evidence that termination under MCL 712A.19b(3)(i) was proper.[2]

## III. BEST INTERESTS

Respondent next argues that the trial court clearly erred when it found by a preponderance of the evidence that termination of respondent's parental rights was in MAM's best interests. We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022), quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks omitted).]

---

[2] Only one statutory ground is required to terminate a respondent's parental rights; therefore, we need not address the trial court's findings in regards to MCL 712A.19b(3)(g) and (j). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012).

We conclude that the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in MAM's best interests. Respondent continued to struggle with the issues that resulted in the earlier termination of her parental rights, including substance use and neglect. Rowley stated during the best-interests hearing that she previously discussed substance abuse treatment options with respondent and made recommendations, and while respondent indicated she was willing to participate in a program if required by the court, respondent never provided any proof of enrollment. Moreover, as the referee explained, the petitioner established by clear and convincing evidence that (1) respondent's rights to the four other children were previously terminated due to serious and chronic neglect, which was demonstrated by respondent's lack of income, housing, and substance abuse issues, and (2) respondent had still not rectified those conditions.

Respondent argues that there was no reason to terminate her parental rights "at this point in the matter" because, while MAM was thriving in a non-relative foster home, the DHHS could have provided services to her. Respondent also argues that she changed since the prior terminations because she had one negative drug screen, attended 15 of 17 visits with MAM, and had an income. However, respondent's lack of meaningful involvement in services in the previous terminations, her continued substance use, and her inadequate parenting skills established that more time would not have made a difference. Moreover, as the trial court noted:

> . . . based on my review of the standards, in summary, I will find that mother's parental ability is extremely low, that giving her another chance on a Parent Agency Agreement is not in the best interest of the child based on mother's history of failing and not following through with [c]ourt orders in this case regarding attending a psychological, that the child is with a non-relative and that the child deserve[s] permanency.

In addition, Mahoney testified during the best-interests hearing that respondent frequently required redirection and reminders of when to feed MAM. Mahoney testified that she did not believe that the redirection could be rectified through any parenting classes due to respondent's memory issues. Mahoney further elaborated that respondent inadvertently overfed MAM and she got sick, despite being told MAM's feeding schedule to avoid that. Further, Rowley detailed that in one of the prior termination cases, respondent completed her case service plan, was reunified with the child, and then shortly after respondent was in an automobile accident where the child was injured and respondent was under the influence of substances. While the trial court acknowledged that respondent seemed to be bonded with MAM, it appropriately focused on MAM's need for safety, stability, and permanence, which respondent was not able to provide for MAM within a reasonable period of time.

Finally, respondent argues that alternative placement options were not adequately considered by the trial court in light of the father's continued parental rights to MAM. However, this Court has held that "the parental rights of one parent may be terminated without the termination of the parental rights of the other parent and it is not necessary that the child be in foster care in order for the termination petition to be entertained." *In re Medina*, 317 Mich App 219, 232; 894 NW2d 653 (2016) (quotation marks and citation omitted). See also *In re Ramsey*, 229 Mich App 310, 316-317; 581 NW2d 291 (1998) (noting that Michigan law is clear that the parental rights of only one parent may be terminated). Moreover, the father repeatedly said that

he was unwilling to care for MAM if respondent's parental rights were terminated, he did not want a case service plan, and he was interested in placing MAM with a family member out of state.

MAM was thriving in her foster home placement, and was finally in a secure, structured, and safe environment. As the trial court opined, MAM's placement was able to provide her with the stability, freedom from substance abuse, and overall healthy environment needed for her to grow and develop. Continued reunification efforts were outweighed by MAM's need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of MAM.

## IV. REASONABLE EFFORTS

Respondent also argues that the DHHS failed to make reasonable efforts to reunite respondent and MAM per the American with Disabilities Act (ADA), 42 USC 12101 *et seq*, given respondent's cognitive deficits. Respondent's argument in this regard appears to be two-fold. First, respondent argues that reasonable efforts were not made. Second, she argues that the DHHS failed to accommodate her intellectual disability. Neither argument is supported by the record.

In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent never raised this particular issue in the trial court, so it is not properly preserved for appellate review. See *Atchley*, 341 Mich App at 336-337.

"This Court reviews unpreserved claims of error in civil cases for plain error affecting substantial rights." *Ayotte v Dept of Health & Human Servs*, 337 Mich App 29, 40; 972 NW2d 282 (2021). In order to establish plain error, a party must show that an error occurred, the error was clear or obvious, and the error affected the party's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

"Reasonable efforts to reunify the child and family must be made in all cases *except* those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App at 355 (emphasis added). MCL 712A.19a(2)(c) provides, in pertinent part:

> (2) The court shall conduct a permanency planning hearing within 30 days after there is a judicial determination that reasonable efforts to reunite the child and family are not required. Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:
>
> * * *
>
> (c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

In the instant case, the DHHS sought the termination of respondent's parental rights from the moment it filed the original petition, alleging in pertinent part that respondent had an extensive

history with CPS that resulted in termination of her parental rights to four other children, and the conditions that led to those terminations continued to exist. At the combined adjudication and termination hearing, petitioner presented as evidence the files from the three previous cases in which respondent's parental rights to four children were terminated. Petitioner also presented the testimony of Peoples, who testified at length about respondent's ongoing issues with substance abuse and unstable housing—the same conditions that led to the previous terminations of her parental rights. At the conclusion of the termination hearing, the referee found that petitioner had established MCL 712A.19b(3)(i) by clear and convincing evidence. Taken together, this record plainly supports that reasonable efforts were not required because the circumstances listed in MCL 712A.19a(2)(c) were met. Thus, respondent's argument that petitioner failed to make reasonable efforts necessarily fails.

Similarly, respondent's argument that the DHHS did not accommodate her cognitive deficits under the ADA is misplaced because reasonable efforts were not required in the first instance. While respondent is correct that "efforts at reunification cannot be reasonable under the Probate Code unless the Department modifies its services as reasonably necessary to accommodate a parent's disability," *In re Hicks/Brown*, 500 Mich 79, 90; 893 NW2d 637 (2017), our Supreme Court made clear that this rule only applies in cases where reasonable efforts are required, *id.* at 85 n 4. As noted above, the DHHS never had the obligation to reunify respondent with MAM in the first place, which meant that the DHHS was not required to provide services. Therefore, respondent cannot prevail on a claim that the DHHS failed to make reasonable accommodations for services it was not obligated to provide. Stated differently, the factual predicate necessary to lend validity to respondent's argument is absent. Accordingly, the trial court did not plainly err when it terminated respondent's parental rights without first providing her with services in compliance with the ADA.

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien