*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FOSTER, Minors.

UNPUBLISHED
April 14, 2026
12:06 PM

No. 376353
St. Clair Circuit Court
Family Division
LC No. 24-000164-NA

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

In this child protective proceeding, petitioner, the Department of Health and Human Services (DHHS), appeals by right the trial court's order of adjudication finding that the DHHS failed to prove by a preponderance of the evidence that there were statutory grounds to justify exercising jurisdiction over the minor children, LTF, AAF, and AF. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Nonrespondent mother, M. Heacock, and respondent father, B. Foster, share three children: LTF, AAF, and AF. At some point Heacock and respondent were married. However, at all times pertinent to this appeal, they were divorced. The two parents shared joint legal custody, and Heacock had primary physical custody. Respondent was granted and exercised parenting time every Wednesday and every other weekend.

On July 9, 2024, the DHHS filed a petition seeking termination of respondent's parental rights based on allegations of ongoing sexual abuse. In the petition, the DHHS alleged that AAF disclosed during a June 26, 2024 Child Advocacy Center (CAC) interview that respondent had touched her "no no spot" multiple times and that AAF "took out" respondent's "boy part." The DHHS further alleged that LTF was also interviewed at the CAC the same day and disclosed that respondent made her sisters "itch" respondent's penis on the inside of his clothing and that respondent touched her sisters' vaginas inside of their clothing. LTF also alleged that she refused when respondent asked her to "itch" his genitals.

-1-

The DHHS filed a motion seeking a ruling that statements LTF and AAF made to the forensic interviewer, Bailey Pionk, during the June 2024 forensic interview would be admissible at the adjudication trial pursuant to MCR 3.972(C)(2). After holding an evidentiary hearing, the trial court denied the DHHS's motion and precluded the children's interview statements from being presented through Pionk's testimony because the court found the statements lacked sufficient indicia of trustworthiness.

The court held the adjudication trial in May 2025. Both LTF and AAF, among others, testified during the trial. At the conclusion of the trial, the court found the evidence insufficient to take jurisdiction over the children on account of respondent's conduct. Consequently, the court dismissed the petition. This appeal followed.

## II. ANALYSIS OF THE ISSUES

## A. TENDER-YEARS HEARING

The DHHS first argues on appeal that the trial court erred when, after holding a tender-years hearing, it prohibited Pionk from testifying at trial to statements made by the children during the forensic interviews conducted on June 26, 2024.

A trial court's evidentiary rulings in a child protective proceeding are generally reviewed for an abuse of discretion. *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id.* (quotation marks and citation omitted). To the extent that this Court's determination of the evidentiary question requires an examination of MCR 3.972(C)(2), this Court's review is de novo. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) ("This Court also reviews de novo the interpretation of statutes, court rules, and legal doctrines."); *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008) ("When an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo.").

Although the rules of evidence for a civil proceeding apply during the adjudication trial in a child protective proceeding, hearsay statements by a child pertaining to acts of child abuse are admissible at the trial if the criteria for reliability set out in MCR 3.972(C)(2) are satisfied. *In re Archer*, 277 Mich App 71, 80; 744 NW2d 1 (2007). MCR 3.972(C)(2) provides, in relevant part:

> Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability, as defined in MCL 330.1100a(27), regarding an act of child abuse, child neglect, confirmed sexual abuse, or confirmed sexual exploitation, as defined in MCL 722.622(g), (k), (q), or (r), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the

-2-

circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

Thus, "MCR 3.972(C)(2)(a) requires a child's out-of-court statements concerning acts of child abuse to have adequate indicia of trustworthiness before they will be admitted at trial." *In re Archer*, 277 Mich App at 82. "The reliability of a statement depends on the totality of the circumstances surrounding the making of the statement," and "[c]ircumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*. This is a non-exhaustive list, and the focus of the analysis must be on the *totality* of all the surrounding circumstances. See *id*. Of particular note, a court may also consider the fact that a statement was made during a forensic interview that was conducted in accordance with the state's forensic interview protocol. *Id*. However, this circumstance is only a single factor, and contrary to the DHHS's apparent contention in the present case, a statement is not somehow reliable per se merely because it was elicited during a properly conducted forensic interview. See *id*.

Here, the trial court undertook a comprehensive evidentiary review, including the forensic interview recordings submitted by stipulation of the parties and the testimony of Pionk, who attested to her specialized training in the application of forensic interview protocols. Notwithstanding these procedural safeguards, the trial court ultimately determined that the minor children's statements lacked sufficient indicia of trustworthiness when evaluated under the totality of the circumstances standard.

The trial court's findings were grounded in a detailed assessment of the mother's influence on the children's narratives. The court identified multiple factors pointing to the mother's potential involvement in shaping the minor children's accounts. Both children initiated their respective interviews by characterizing the alleged conduct as "inappropriate"—a linguistic convergence the court regarded as improbable absent external suggestion, particularly when viewed in conjunction with other statements implicating maternal influence. For instance, AAF inquired whether Pionk was recording her statements with the intent of relaying them to her mother. LTF expressly declined to reveal certain information imparted by her mother regarding the forensic interview process, noting that disclosure could result in adverse consequences for her mother. LTF also sought to pause the interview to consult with her mother and acknowledged her mother's instruction to withhold information about a third party named Michael. Further, LTF articulated apprehension regarding the interviews' potential impact on her relationship with respondent. Collectively, these circumstances led the court to conclude that there was a "definite implication that the minors' mother was providing a motive to fabricate."

Moreover, the trial court observed that the interview transcripts suggested the children had participated in multiple interview sessions at the CAC, and that their initial disclosures were made to their mother rather than to neutral third parties. Critically, the record was devoid of evidence elucidating the spontaneity or contextual circumstances surrounding these initial disclosures to the mother. The court further noted a conspicuous lack of consistent repetition or corroborative detail across the children's accounts during the forensic interviews. Both minors also reported that the

respondent explicitly instructed them to "stop" during the alleged incidents, which the court viewed as undermining the reliability and internal consistency of their statements.

On appeal, the DHHS does not substantively challenge the trial court's factual determinations regarding the content of the minors' forensic interviews. Rather, the DHHS advances the argument that the mere fact that these statements were elicited during forensic interviews conducted in accordance with established protocols suffices to establish their reliability. This position, however, is inconsistent with prevailing jurisprudence, which holds that the reliability of statements obtained through forensic interviews is not presumed but must instead be established through a holistic assessment of the totality of the circumstances. *In re Archer*, 277 Mich App at 82. The trial court's analysis reflects a rigorous application of this standard, taking into account relevant factors articulated in *In re Archer*. The DHHS has failed to articulate any persuasive basis upon which to conclude that the trial court abused its discretion in determining that the requisite indicia of reliability were lacking under the totality of the circumstances. *In re Jones*, 286 Mich App at 130.

## B. REQUEST FOR JURY TRIAL

After the trial court denied the DHHS's motion to introduce the children's hearsay statements at trial under MCR 3.972(C)(2), the DHHS filed an emergency motion for a jury trial. The DHHS argued that because the court had viewed the June 2024 forensic interview videos for purposes of the tender-years hearing, it would be inappropriate for the same trier of fact, i.e., the same referee, to now preside over the actual adjudication trial when, by statute, the forensic video is explicitly inadmissible at the adjudication. The DHHS reasoned that the trier of act had now heard inadmissible hearsay before the adjudication and could not sit as an impartial jurist. Below and now on appeal, the DHHS asserts that the trial court erred by denying its request for a jury trial at the adjudicative phase.

A trial court's decision whether to grant an untimely request for a jury trial is reviewed for an abuse of discretion. *In re Hubel*, 148 Mich App 696, 697; 384 NW2d 849 (1986). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *In re Jones*, 286 Mich App at 130. This Court reviews de novo questions involving the interpretation of court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). When called upon to interpret and apply court rules, this Court applies the principles governing statutory interpretation. *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020). Court rules should be interpreted to effectuate the intent of the drafter, our Supreme Court. *Id*. Further, clear and unambiguous language should be given its plain meaning and enforced as written. *Id*.

At the outset, we recognize that the trial court appropriately considered the forensic interview videos during the tender-years hearing. *In re Archer*, 277 Mich App at 81-83, (holding that it is proper for a trial court to admit and consider a video recording of a child's forensic interview at an evidentiary hearing held prior to the adjudication trial for the purpose of determining whether the circumstances surrounding the statements provide sufficient indicia of trustworthiness to justify their admission at trial through the testimony of the interviewer). Further, it is well established that forensic interview videos are inadmissible at the adjudication trial itself. (MCL 712A.17b(5) expressly prohibits the admission of a child's videorecorded statement during the adjudication). However, the same statutory provision mandates admission of the

videorecorded statement at all other proceedings. Thus, "this statute does not prohibit the introduction of such evidence at proceedings that take place either before or after the adjudicative stage." *In re Archer*, 277 Mich App at 81.

In *In re Martin*, 316 Mich App 73, 83; 896 NW2d 452 (2016), this Court explained:

> [A] videorecorded statement taken in compliance with MCL 712A.17b must be admitted at a tender-years hearing and can be used by the trial court to assess whether a proposed witness who took the videorecorded statement should be permitted to testify at trial about the statement, i.e., to assess whether "the circumstances surrounding the giving of the statement provide[d] adequate indicia of trustworthiness." [Second alteration in original; citation omitted.]

Accordingly, no procedural irregularities occurred in this respect. Nonetheless, the DHHS maintains that it was entitled to a jury because the referee's impartiality was tainted by having viewed the videos of the forensic interviews that were inadmissible at trial.

A party is entitled to a jury trial only at the adjudicative phase of a child protective proceeding. MCR 3.911(A); *In re Sanders*, 495 Mich 405-406. The procedure for demanding a jury for the adjudication trial is governed by MCR 3.911(B), which provides:

> (B) Jury Demand. A party who is entitled to a trial by jury may demand a jury by filing a written demand with the court within:
>
> (1) 14 days after the court gives notice of the right to jury trial, or
>
> (2) 14 days after an appearance by an attorney or lawyer-guardian ad litem, whichever is later, but no later than 21 days before trial.
>
> The court may excuse a late filing in the interest of justice. [MCR 3.911(B).]

Here, the DHHS concedes that its request for a jury trial was untimely filed. Nevertheless, DHHS asserts that the court should have excused this procedural defect in furtherance of the interests of justice. In advancing this argument, DHHS maintains that the referee's determination—pursuant to MCR 3.972(C)(2)—that the children's statements lacked indicia of trustworthiness rendered the referee inherently biased, thereby necessitating a jury trial. However, adopting DHHS's position to its logical conclusion would preclude any judge or referee who rules on pretrial motions—particularly those involving tender-years hearings—from subsequently presiding over the adjudication trial. For example, should the court grant a pretrial motion and find a child's statement trustworthy, DHHS's rationale would mandate a finding of bias in favor of DHHS; conversely, a denial would indicate bias in favor of the respondent. Such a position is untenable as a matter of law and policy. Furthermore, there exists no legal authority supporting the proposition that a judicial officer who makes findings during a tender-years hearing is thereby disqualified from presiding over the subsequent adjudication trial.

It is a fundamental principle in bench trials that the trial court is presumed to know the law and to rely exclusively upon evidence properly admitted in reaching its decisions. *In re Archer*, 277 Mich App at 84. DHHS's contrary assertion rests on a speculative and unsupported presumption that the referee disregarded this presumption of regularity and failed to adhere to the applicable evidentiary standards when determining jurisdiction. Given these circumstances, the interests of justice did not compel the trial court to grant DHHS's belated request for a jury trial. Beyond the presumption that the court both knows and applies the law; the record is devoid of any evidence suggesting that the trial court's decision to decline jurisdiction over the minor children was the result of bias attributable to the referee's involvement in prior pretrial proceedings.

As to DHHS's claims of judicial bias, it is axiomatic that due process demands an impartial and unbiased adjudicator. *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017). To establish judicial bias sufficient to warrant disqualification, a party must demonstrate either actual bias or circumstances in which the probability of actual bias is constitutionally intolerable. *Cain v Dep't of Corrections*, 451 Mich 470, 497–98; 548 NW2d 210 (1996). The law presumes judicial impartiality, and this presumption is not easily overcome—particularly in the absence of evidence of personal or extrajudicial prejudice. *Id*. at 495–97.

While DHHS alleges in the instant matter that the referee was substantially and unfairly influenced by evidence presented in video form, this assertion appears to be predicated primarily on dissatisfaction with the referee's ultimate findings, rather than on any objectively demonstrated bias. Judicial rulings alone, absent a showing of deep-seated favoritism or antagonism, are almost never sufficient to support a claim of judicial bias. *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003). Moreover, judicial opinions formed in the course of current or prior proceedings do not constitute grounds for disqualification unless they evidence such deep-seated favoritism or antagonism as to render fair judgment impossible. *Cain*, 451 Mich at 496. DHHS has failed to adduce any evidence of this nature. Accordingly, DHHS has not rebutted the presumption of judicial impartiality.[1]

C. JURISDICTION

---

[1] The DHHS also suggest that the referee was biased against it because, in 2016 she was the guardian ad litem for some children, not the ones at issue in this appeal, in a case involving Heacock's parental rights. The DHHS's counsel briefly mentioned this fact during arguments on DHHS's motion for jury trial. When ruling on the DHHS's motion, the referee indicated that she had no independent recollection of the case. The DHHS fails to present any evidence or meaningful argument regarding how the referee's *much* earlier participation as a guardian ad litem in a case involving Heacock and different children would make the court biased against the DHHS. Under these circumstances, we deem this issue abandoned. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004) ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position. Insufficiently briefed issues are deemed abandoned on appeal.") (quotation marks and citations omitted).

Lastly, the DHHS argues that the trial court erred when it declined to exercise jurisdiction over the minor children. This Court reviews a trial court's decision whether to exercise jurisdiction for clear error in light of the court's factual findings. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *In re Long*, 326 Mich App 455, 460; 927 NW2d 724 (2018) (citation omitted). To the extent that the jurisdictional issue presents a question of statutory interpretation, this Court reviews that issue de novo. *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich at 404. During the adjudicative phase, the court determines whether it can assume jurisdiction over the children. *Id*. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App at 295. At an adjudication trial, the petitioner has the burden of proving a statutory ground supporting jurisdiction by a preponderance of the evidence. *In re Sanders*, 495 Mich at 405.

In this case, DHHS requested that the court assume jurisdiction over the children under MCL 712A.2(b)(1) and (2), which provide in relevant part that a court has jurisdiction over a child in the following circumstances:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

Here, DHHS predicates its appellate argument entirely on its dissatisfaction with the trial court's credibility determinations. Effectively, DHHS urges this Court to disregard and supplant the trial court's findings concerning witness credibility. It is, however, a well-established principle that appellate courts must afford considerable deference to the trial court's unique position to assess the demeanor, credibility, and weight of the evidence presented by witnesses who appear before it. *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014). Where, as here, DHHS presents no substantive or persuasive arguments beyond its disagreement with the trial court's credibility assessments, it fails to meet its burden to show that the lower court's refusal to exercise jurisdiction was clearly erroneous. *In re BZ*, 264 Mich App at 295.

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle